WILLIAM T. HUNTER, Petitioner, *v.* "LORRAINE POWERS", Respondent.*

Domestic Relations Court of the City of New York, Children's Court, Bronx County, October 27, 1954.

* Name used herein fictitious for purposes of publication.

*Herbert S. Harris, Jr.,* for petitioner.

*Albert P. Singman* for respondent.

DISERIO, J.   The respondent mother, " Lorraine Powers ", is charged with neglect of her child, an infant under the age of sixteen years, pursuant to section 61 of the Domestic Relations Court Act of the City of New York.

While it can be conceded " Religious Faith " is substantially interwoven in the alleged acts of neglect charged to the respondent mother, there are other and more substantial charges of neglect arising out of the controversy which would warrant the commencement of these proceedings, the hearing before me and the requirement that I make a final determination.

The parents have been separated for some time.   The matter originally came to the attention of the Family Division of this court and pursuant thereto an order was entered into and the father was contributing thereunder the sum of $17.50 weekly. This sum I understand has been substantially increased in the New York Supreme Court in which court there is now pending a suit for legal separation.

The Domestic Relations Court (Family Division) previously had jurisdiction of this entire marital controversy and, while in this case it was not immediately done, frequently and upon hearing that serious charges of neglect are concerned involving children under the age of sixteen years, such matter can and often is referred to the Children's Court, or Division, for a petition pursuant to section 61 of the New York City Domestic Relations Court Act, then for a hearing and a final determination.

The father of the child himself, through the agency of the Society for the Prevention of Cruelty to Children, has sought this latter remedy and perhaps so, wisely, since only too often it becomes even more difficult, ofttimes confusing in endeavoring to determine and deal with the seriousness and trauma of the marital conflicts affecting the breakup of the home and the resultant reaction or conduct of the wife and mother concerning the care, guidance, education and supervision of the child and so very often the proper rights of each parent affecting visitation, especially on the part of the father.

To me these personal rights are indeed more important and precious than material or property rights and it is high time

they were not, as they often are, brushed off lightly by litigating mothers. Even fathers are entitled to some rights and privileges; namely, in cases of support, reasonable visitation and especially so, when determined by a court order.

Under the category of guidance and supervision, of a child, is required the education; and with the education of such child, a compliance with the requirements of the spiritual faith in which the child was born or baptized. Especially so in this case where there had been an antenuptial agreement made between the mother, a Protestant, and now a member of the Jehovah's Witness sect, and with the father, a Catholic.

It is conceded by the parties, the child was baptized a Catholic, and that previous thereto and before her birth, the parents were wedded in the Catholic church, and that such an antenuptial agreement was made for the child.

It is further admitted by the mother that the child although baptized a Catholic, and religiously brought up in such faith, until the age of eight years, has now been induced by the mother to abandon her faith, and her religious instruction in such faith, and that she now is, like her mother, a member of the Jehovah's Witness sect, and practicing all of the tenets of such faith.

The other serious charges and the ones with which the court is more particularly concerned are that the child is neglected, in that she is left alone, and without maternal care and supervision by its mother, since the mother leaves this child alone unattended and unsupervised at night while she applies herself to Bible meetings and discussions among her friends or followers.

Further, that this child ten years of age at the time of the hearing and though baptized a Catholic and a religious follower of such faith until the age of eight years, converted by the mother to another faith (Jehovah's Witness) has often been observed on the streets and at various homes at different hours of the day or night carrying a bag of their literature for sale, solicitation or distribution among followers and the general public.

While it may not be disputed that many of these charges revolve around the religious training of the child, the facts concerning neglect are readily distinguishable and one is not to become confused by counsel for the respondent who claims that the court has " no jurisdiction " since the controversy concerns only the religious faith of the child.

1. Leaving one's child alone in the home or even on the streets unguarded, unattended and no provision made for its safety or protection is neglect.

2. Compelling a child of tender years (age 10) to peddle or distribute literature at various hours of the day, after school and even at night — when the child should be at play or attending to its schoolwork — or during the hours when the child should be carefully tucked away in bed to sleep, and provision not made for its protection and safety, is neglect.

Both of these charges, serious in nature, I find from the testimony to be true.

I, therefore, find the child to be so neglected.